320 So.2d 288 (1975)
Ronald WILLE, Individually and on behalf of his minor daughter Rhonda Ann Wille
v.
NEW ORLEANS PUBLIC SERVICE, INC., et al.
No. 7024.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1975.
*289 A. R. Christovich, Sr., A. R. Christovich, Jr., New Orleans, for defendant-appellee, New Orleans Public Service, Inc.
Orlando G. Bendana, Roy F. Amedee, Jr., New Orleans, for plaintiff-appellant.
Stephen L. Huber, for defendant-appellee Liberty Mutual Ins. Co.
Bronfin, Heller, Feldman & Steinberg, Bernard H. Berins, New Orleans, for defendant, third-party defendant-appellee Herman L. Walton.
Before LEMMON, STOULIG and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff has appealed from a dismissal of his suit against New Orleans Public Service, Inc. and Liberty Mutual Insurance Company. Defendant Philip Walton, though named as a party defendant, was not served with the petition or citation.
On March 22, 1970, plaintiff's thirteen year old daughter, Rhonda, having been a passenger on a Public Service bus which was heading uptown on Magazine Street, exited from the bus to the sidewalk at a service stop at Natorium Drive in Audubon Park. She turned around and entered a pedestrian crosswalk so as to cross Magazine Street in front of the bus. After clearing the bus she was struck by an automobile passing the bus on its left side, which automobile was owned by Philip Walton and driven by his son, Herman Walton. During these events Rhonda was accompanied by four school girl friends.
Plaintiff's case against Liberty Mutual is based upon allegations of negligence on the part of Herman Walton and the uninsured motorist provisions of Liberty Mutual's policy covering plaintiff. His cause of action against Public Service is based upon the allegation of the bus driver's "Negligent waving or signalling to [Rhonda] that the way was clear for her to cross the street in front of the bus when, in fact, he was aware or should have been aware that the way was not clear or safe due to the approaching vehicle coming at a rapid rate of speed." Liberty Mutual filed third-party petitions against Philip and Herman Walton seeking indemnification as an alternative to its denial of liability. Philip Walton was never served but Herman Walton answered the third-party petition denying liability.
*290 The trial judge dismissed the main demand as well as Liberty Mutual's third-party petition, giving the following reasons for judgment:
"Whether or not the bus driver `waved' Rhonda across the street is disputed by the bus driver, and there is also some conflict in the testimony of plaintiff's witnesses on this point."
* * * * * *
"The Court is of the opinion that even if the bus driver had made some motion, which Rhonda assumed was meant for her to cross in front of the bus, it did not mean, and she had no right to assume, that he was doing other than to advise her that it was safe for her to pass in front of the busthat he was not going to move forward while she was passing. It did not indicate to her that she was free to enter the remainder of the street, in front of possible oncoming traffic, without first observing whether or not it was safe for her to do so.
"It is the opinion of the Court that, having safely crossed in front of the bus, it was Rhonda's duty to check to see if there was any oncoming vehicles before proceeding further into the street, and that her failure to do so constituted contributory negligence on her part, thus barring her from recovery."
Rhonda testified that after she left the bus and turned around she leaned back and looked to her left behind the bus to see if any traffic was approaching and seeing none started to cross. Reaching the middle of the bus she looked up at the bus driver and "he looked in his rearview mirror and he motioned to me to go across." She understood from that signal that it was safe for her to go across. One of her companions testified to the same effect:
"We got off the bus, stood on the curb, walked out in front of the bus and just waited, the bus driver made a motion like this and she went."
This witness further testified that she interpreted the driver's signal to mean for them "to go ahead over" and "that it was O.K. to cross the street."
The other three girls did not see the driver make any signals but they did not rule out the possibility that he did.
The bus driver testified that as the girl exited from his bus his attention was on the door which they were using, on his right. The screech of the brakes caused him to look to his left where he saw Rhonda get struck. He denied without equivocation that he gave any signal whatsoever to Rhonda and he was not even looking at her and the others as they passed in front of his bus.
Plaintiff had the burden of proving that the driver made a signal for Rhonda to cross; that he intended to convey to Rhonda the thought that he had checked for traffic on the left side of the bus, that no such traffic was approaching and that it was safe for her to make the crossing; that she had a legal right to and did in fact rely on the driver's signal; and that this combination of circumstances caused her to be struck. In connection with her right to rely on the driver's signal it is clear from the record that Rhonda had made her exit from the bus and was safely on the sidewalk before the driver allegedly signaled to her. At this point she was no longer in the capacity of a passenger and her relationship to the bus driver was the same as any pedestrian. See Deason v. Greyhound Corporation, 106 So.2d 348 (La.App. 1st Cir. 1958) and Lewis v. Goodman, 92 So.2d 723 (Orl.App.1957). We are constrained to observe that the circumstances of a case would have to be most unusual to find that a driver of a vehicle stopped at a pedestrian crosswalk can be placed under a duty to insure the safe crossing of a pedestrian in front of him even to the extent that the risk of such a pedestrian being struck after passing his vehicle by another vehicle is within the ambit *291 of the first driver's duty. But even assuming that such a case might be made under unusual circumstances, those of the instant case do not support such a theory.
We do not have the benefit of the trial judge's credibility call as between the two girls who testified that the driver gave a signal and the driver who testified that he gave no signal at all. But we interpret the trial judge's findings to mean that while the driver may have given some signal the plaintiff did not establish by a preponderance of evidence that such signal carried with it the significance which Rhonda attached to it, namely, that the driver was assuring her that he had checked for oncoming traffic and that she could enter the roadway without looking and rely on his guarantee that there was no approaching traffic.
Rhonda never looked down Magazine Street at all after passing in front of the bus. She said she had just stepped out beyond the edge of the bus and that she never saw the automobile. In answer to how far from the edge of the bus that she was when she was hit she said that she had taken "a few steps." From this testimony we cannot conclude that at the time she reached the edge of the bus there was no way for her to look down Magazine Street to check for oncoming traffic and that she was entitled or required to rely on the bus driver's assurance that no vehicle was approaching. We are cited no authority for the proposition that a typical thirteen year old child may step blindly into a roadway in reliance upon the signal of a third party. On the contrary, she was under a duty to look and see what she could have seen and her dereliction was the sole cause of her accident.
Because of Rhonda's negligence, plaintiff's recovery against Liberty Mutual Insurance Company is also barred so that we need not consider the allegations of negligence on the part of the uninsured motorist Herman Walton. Plaintiff relies on Cooper v. Lane, 286 So.2d 759 (La.App. 1st Cir. 1973) for the proposition that Rhonda's position in a marked pedestrian crosswalk when she was struck made Walton absolutely liable. In the cited case the pedestrian looked and saw the approaching car and the driver saw the pedestrian in time to stop. None of the elements were established by plaintiff in the instant case.
Accordingly, the judgment of the trial court is affirmed at plaintiff's cost.
Affirmed.
LEMMON, J., concurs.