[No. B194605. Second Dist., Div. Eight. Jan. 23, 2008.]

DANIEL E. GILMER, Plaintiff and Appellant, v.
KYSEME ELLINGTON, Defendant and Respondent.

COUNSEL

Gajewski & Baughan and Edward W. Baughan for Plaintiff and Appellant.

Gibeaut, Mahan & Briscoe, J. Jackson Briscoe and Julie A. Mullane for Defendant and Respondent.

OPINION

**RUBIN, J.**—This case arises from an incident in which plaintiff and appellant Daniel E. Gilmer was injured when a left-turning driver collided with

plaintiff as he was riding his motorcycle through an intersection. Plaintiff sued not only the left-turning driver, but also defendant and respondent Kyseme Ellington for negligently gesturing to that driver to proceed with the turn. The trial court granted defendant's motion for judgment on the pleadings, finding defendant did not owe a duty to plaintiff. Plaintiff appeals from the resulting judgment of dismissal. He contends the trial court erred in granting the motion because defendant's liability turned on a factual determination incapable of resolution by judgment on the pleadings. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We recite the facts in accordance with the usual rules of appeal from a dismissal entered after a motion for judgment on the pleadings has been granted without leave to amend.[1] On January 30, 2006, codefendant Rebecca Cherry was talking on a cell phone while waiting for traffic conditions to allow her to safely turn left from southbound Lincoln Boulevard onto eastbound Nelrose Avenue. Defendant, then traveling north on Lincoln Boulevard in the lane closest to the middle, stopped and "gestured and motioned indicating to defendant Cherry that it was safe and clear for her" to make the turn. But it was not safe because, although defendant had stopped, plaintiff was approaching the intersection on his motorcycle. Cherry's vehicle collided with plaintiff's motorcycle in the intersection.

Plaintiff brought a personal injury action against defendant and Cherry, among others. Cherry was sued for actually colliding with plaintiff's motorcycle while the gravamen of plaintiff's action against defendant was that defendant negligently signaled Cherry to turn left without first ascertaining that Cherry could proceed safely in front of all oncoming traffic, not just defendant's stopped vehicle.

In his motion for judgment on the pleadings, defendant argued that the complaint failed to state a cause of action under *In re Kirk* (1962) 202 Cal.App.2d 288, 291 [20 Cal.Rptr. 787] (*Kirk*) and *Sesler v. Ghumman* (1990) 219 Cal.App.3d 218 [268 Cal.Rptr. 70] (*Sesler*), because, under California

---

[1] As with a demurrer, " '[a]ll material facts that were properly pleaded are deemed true, but not contentions, deductions, or conclusions of fact or law. . . . [W]e determine whether the complaint states a cause of action and whether the defect can reasonably be cured by amendment. If the pleading defect can be cured, the trial court committed reversible error. If not, we affirm. The plaintiff bears the burden of proof on this issue. Finally, the judgment will be affirmed if it is proper on any grounds raised in the motion even if the court did not rely on those grounds.' [Citation.]" (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1398, fn. 4 [48 Cal.Rptr.3d 770].) "In addition to the facts pleaded, we may consider matters that may be judicially noticed, including a party's admissions or concessions which cannot reasonably be controverted. [Citation.]" (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 989–990 [94 Cal.Rptr.2d 643].)

law, Cherry had the duty to ascertain whether she could safely turn left across each successive lane of oncoming traffic and, as a matter of law, defendant's act of signaling to Cherry could be interpreted only as defendant yielding his own right-of-way, not that it was generally safe for Cherry to turn. Plaintiff countered that whether defendant's act of gesturing to Cherry was negligent under the circumstances was a question of fact.[2]

The trial court found the complaint failed to state a cause of action, reasoning: "Both 'the law and common sense' dictate that [defendant] could not waive the right of way as to any other motorist but himself. [(*Sesler, supra*, 219 Cal.App.3d at p. 224.)] Given that defendant Cherry was required to look for and yield to [plaintiff] regardless of [defendant's] hand motion, [defendant] neither had a duty to [plaintiff], breached that duty nor was a substantial factor in causing harm to [plaintiff]." An order of dismissal was subsequently filed, from which plaintiff filed a timely notice of appeal.

## DISCUSSION

A. *Defendant Had No Legal Duty to Assure All Oncoming Traffic Was Clear Before Signaling to Cherry That He Was Yielding His Right-of-way*

Plaintiff contends that the operator of a motor vehicle has a duty to use reasonable care in signaling other drivers to initiate a turning maneuver. He argues that, although no California case has expressly so held, this is the trend in the law in the majority of other states and we should adopt it here. We disagree.

To establish negligence, it must be shown that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*); *Barber v. Chang* (2007) 151 Cal.App.4th 1456, 1463 [60 Cal.Rptr.3d 760] (*Barber*).) The absence of any one of these three elements is fatal to a negligence claim. Accordingly, if the plaintiff cannot establish that the defendant owed the plaintiff a duty, the action must be dismissed. (See, e.g., *Bryant v. Glastetter* (1995) 32 Cal.App.4th 770, 776 [38 Cal.Rptr.2d 291] (*Bryant*).)

Generally, all people are required to use ordinary care to prevent others from being injured as a result of their conduct but " '[t]he existence of

---

[2] Alternatively, plaintiff argued that defendant's conduct constituted negligence per se because it violated Los Angeles Municipal Code section 80.03, which precludes civilians from directing "traffic by voice, hand or other signal . . . ." He does not reiterate this argument on appeal.

a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. [Citation.]' " (*Barber, supra*, 151 Cal.App.4th at p. 1463; see also *Paz v. State of California* (2000) 22 Cal.4th 550 [93 Cal.Rptr.2d 703, 994 P.2d 975].)

■ There are several factors to be considered in determining the existence and scope of a duty of care (*Ann M., supra*, 6 Cal.4th at p. 673). In *Ann M.*, at page 675, footnote 5, our Supreme Court listed the following factors: " '[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' [Citation.]" (See also *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 [63 Cal.Rptr.3d 99, 162 P.3d 610]; *Barber, supra*, 151 Cal.App.4th at p. 1464, fn. 1.) Of that list, we find the following particularly relevant here: (1) the moral blame attached to the defendant's conduct; (2) the extent of the burden to the defendant; and (3) the consequences to the community of imposing a duty to exercise care with resulting liability for breach.

■ In California, Vehicle Code section 21801 (section 21801) governs the respective duties of drivers of left-turning vehicles and those of approaching vehicles. That statute imposes upon the left-turning driver the duty to ascertain, before proceeding across each successive lane of oncoming traffic, if any approaching vehicle constitutes a hazard. (§ 21801, subd. (a).)[3] Section 21801, subdivision (a) has been construed to mean that "if the oncoming vehicle in the lane closest to the left turning vehicle surrenders its right of way by indicating to the operator of the left turning vehicle that it desires him to proceed, such operator may not proceed beyond that first lane of traffic, now effectively blocked by the waiving vehicle, if in fact other vehicles approaching in any of the other oncoming lanes will constitute a hazard to the left turning vehicle during the turning movement." (*Kirk, supra*, 202

---

[3] Section 21801 provides: "(a) The driver of a vehicle intending to turn to the left or to complete a U-turn upon a highway, or to turn left into public or private property, or an alley, shall yield the right-of-way to all vehicles approaching from the opposite direction which are close enough to constitute a hazard at any time during the turning movement, and shall continue to yield the right-of-way to the approaching vehicles until the left turn or U-turn can be made with reasonable safety. [¶] (b) A driver having yielded . . . and having given a signal when and as required by this code, may turn left . . . and the drivers of vehicles approaching the intersection or the entrance to the property or alley from the opposite direction shall yield the right-of-way to the turning vehicle."

Cal.App.2d at p. 291.)[4] Pursuant to subdivision (b) of section 21801, the burden shifts to oncoming traffic to yield the right-of-way to the left-turning driver only where the left-turning driver has complied with section 21801, subdivision (a) but is forced to stop midturn for some reason beyond the driver's control. (*Id.*, subd. (b).)

■ Subsequently, in *Sesler, supra*, 219 Cal.App.3d at page 224, the court held: "While a motorist may waive his or her own right-of-way, neither the law nor common sense dictates that the waiver applies to any other motorist." In *Sesler*, the plaintiff was traveling south when he stopped his motorcycle in a left turn pocket and waited for traffic to clear in the three oncoming lanes; the cars in oncoming lanes 1 and 2 stopped and motioned for the plaintiff to proceed with his left-hand turn in front of them. Seeing no hazard in lane 3 (the lane closest to the curb), the plaintiff commenced his turn; but the defendant, who had been traveling north in lane 1, had moved to lane 3 to avoid the cars he saw stopped in front of him and he collided with the plaintiff in the intersection.

The trial court refused to give the following special instruction that the defendant had proposed: "If an oncoming vehicle in the lane closest to the left-turning vehicle surrenders its right-of-way by indicating to the operator of the left-turning vehicle that it desires him to proceed, such operator may not proceed beyond the first lane of traffic, now effectively blocked by the waiving vehicle, if in fact other vehicles approaching in any of the other oncoming lanes will constitute a hazard to the left-turning vehicle during the turning movement." The Court of Appeal reversed, finding the failure to give the proffered instruction to be prejudicial error. The appellate court reasoned the absence of the instruction allowed the *Sesler* plaintiff—the left-turning motorcycle rider—to argue, contrary to the law, that he had no duty to anticipate that other drivers would not yield the right-of-way. (*Sesler, supra*, 219 Cal.App.3d at p. 222.)

Following *Sesler*, the Committee on California Civil Jury Instructions added the following italicized language to BAJI No. 5.11, which now reads: "A person who has the right of way may intentionally waive it, or may act in such a manner as to indicate to a reasonably prudent person that [he] [she] intends to waive or has waived the right of way. [¶] [A waiver is the intentional relinquishment of a known right.] [¶] [*However, a waiver by the*

---

[4] In *Kirk*, the minor was declared a ward of the court as a result of having violated section 21801, subdivision (a) by failing, while making a left turn, to yield the right-of-way to a vehicle approaching from the opposite direction. The appellate court rejected the minor's argument that, because the driver in the lane closest to the minor's left-turning vehicle gave the minor the "go ahead signal," the vehicle approaching in the next oncoming lane did not constitute a hazard within the meaning of section 21801. (*Kirk, supra*, 202 Cal.App.2d at p. 290.)

*driver of one vehicle is not in itself a waiver of the right of way by the driver of any other vehicle.*]" (Italics added.)

■ From these authorities we glean the following rules: (1) approaching vehicles in oncoming traffic that are close enough to constitute a hazard to a left-turning vehicle have the right-of-way over that left-turning vehicle; (2) a left-turning driver has a duty to ascertain whether an approaching vehicle constitutes a hazard and, if so, to yield the right-of-way to that approaching vehicle; (3) such duty continues throughout the turning maneuver and applies to each approaching vehicle in each successive lane of oncoming traffic; and (4) even where the driver of an approaching vehicle yields its right-of-way, the left-turning driver has a continuing duty to anticipate that other drivers will not yield their right-of-way; i.e., the left-turning driver may not treat one driver's yielding as a yielding of the right-of-way of any other approaching vehicle. (§ 21801; *Sesler, supra,* 219 Cal.App.3d at p. 224; *Kirk, supra,* 202 Cal.App.2d at p. 291.)

■ Plaintiff has not cited us to any California authority that imposes on a driver who elects to yield the right-of-way to a left-turning driver the duty to ascertain whether it is safe for the left-turning driver to turn across all lanes of oncoming traffic, not just the yielding driver's lane, before signaling an intention to yield. Strong policies suggest such a rule would be unwise. The proposed duty would be inconsistent with the established rule expressed plainly by the Legislature in section 21801, subdivision (a), that it is the left-turning driver who has the obligation to ascertain throughout the turning maneuver whether it is reasonably safe to make the turn. Moreover, as we explain, many of the relevant factors typically considered in determining the existence of a duty (e.g., moral blame, burden on the defendant, and adverse consequences to the community) all militate against imposing a duty on drivers who elect to yield their own right-of-way. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624] *(Ballard);* *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561] *(Rowland),* superseded by statute on another point; *Bryant, supra,* 32 Cal.App.4th at p. 778.)

1. *Moral Blame*

First, a yielding driver bears no moral blame for a collision between a left-turning driver and a driver that does not yield his right-of-way. This is because the Legislature has imposed upon left-turning drivers, not oncoming drivers, the statutory duty to ascertain whether it is safe to make the turn across each individual lane of traffic. Nothing in the law suggests that this duty can be delegated to oncoming drivers. The left-turning driver's duty to yield to oncoming traffic that constitutes a potential hazard is a fundamental

part of everyday driving; the failure to meet this duty, sadly, produces numerous deaths and injuries each year. The fact that one polite driver elects to waive his right-of-way to a left-turning vehicle does not cloak that driver with moral opprobrium. We should encourage cooperative drivers, not penalize them.

### 2. *Burden*

Second, it would place an unreasonable burden on yielding drivers to impose upon them the duty of assuring a left-turning driver may safely cross all lanes of traffic. The only tools the yielding driver has to ascertain whether oncoming traffic is close enough to constitute a hazard to the left-turning vehicle are rearview and side view mirrors; but as the labeling on those mirrors warns us, these instruments notoriously distort distance. Moreover, the yielding driver has little ability to anticipate the speed with which the left-turning driver will execute the turn. By contrast, the left-turning driver is able to see oncoming traffic directly ahead, and is in control of his or her own speed. Because a yielding driver is in a poor position to make the speed and distance calculations necessary to ascertain whether oncoming vehicles are close enough to constitute a hazard to a left-turning vehicle, it would be unreasonable to impose that duty on the yielding driver.[5]

### 3. *Adverse Consequences*

Finally, there would be reactive negative consequences to the community by imposing a duty on the yielding driver; most notably, a relaxed vigilance by left-turning drivers who may rely unthinkingly on ambiguous signals from other drivers, or at least claim to have done so. At a time when "road rage" is unhappily common (see *Boucher v. Grant* (D.N.J. 1999) 74 F.Supp.2d 444, 445 (*Boucher*)), the added duty may further erode what infrequent civility is left on the roads. If the common courtesy of yielding the right-of-way results in lawsuits, we can expect further egocentric driving.

We acknowledge that some of the other factors historically considered in ascertaining duty are consistent with its imposition here. For example, forseeability of harm, certainty of injury, connection between conduct and injury all are generally present in the type of factual situation which this case presents. (See *Ballard, supra*, 41 Cal.3d 564; *Rowland, supra*, 69 Cal.2d 108;

---

[5] In *Hoekman v. Nelson* (2000) 2000 SD 99 [614 N.W.2d 821, 825] (*Hoekman*), the South Dakota court reasoned that the burd en of requiring a signaling motorist to assume the responsibility to assure the safety of a pedestrian or left-turning motorist from other oncoming traffic "may be extreme and even impossible, since the signaler cannot control the actions of the other vehicles. There are also certain types of vehicles that contain blind spots, which preclude the yielding driver from seeing what is coming from behind."

*Bryant, supra,* 32 Cal.App.4th 770.) Nevertheless, the absence of the other factors plus the statutory duty imposed by statute on left-turning drivers, convince us that the balance falls more squarely on the side of absence of duty.

■ Although other state courts are divided on this issue, we find persuasive the reasoning adopted by those jurisdictions that reject duty.[6] For example, in *Peka v. Boose* (1988) 172 Mich.App. 139 [431 N.W.2d 399], the court observed that " 'the determination of whether a duty should be recognized in any individual case is based on a balancing of the societal interests involved, the severity of the risk, the burden upon the defendant, the likelihood of occurrence and the relationship between the parties.' " (*Id.,* 431 N.W.2d at p. 400.) The Michigan court concluded that, where all the participants are adults, driving in ordinary circumstances, a driver who signals permission to a left-turning driver to cross in front of the signaling driver's vehicle assumes no duty to other drivers to warn the left-turning driver of the approach of those other drivers: "We find as a matter of law that [the signaling driver's] hand motion signified nothing more than permission to cross in front of her car and could not be relied upon as assurance that all was clear ahead." (*Id.* at p. 401; distinguishing *Sweet v. Ringwelski* (1961) 362 Mich. 138 [106 N.W.2d 742] [the meaning a 10 year old might attach to a truckdriver's signal to cross the street was a question of fact].)

Similarly, in *Duval v. Mears* (1991) 77 Ohio App. 3d 270 [602 N.E.2d 265] (*Duval*), the issue was, as it is here, "whether a duty of care should be imposed upon a motorist, who signals another motorist traveling in the opposite direction to proceed to turn left in front of her, to ascertain that it is safe to do so." (*Id.,* 602 N.E.2d at p. 267.) The Ohio court concluded that it should not, reasoning that the act of signaling a turning driver was no more than an act of courtesy. (*Ibid.*; cf. *Bell v. Giamarco* (1988) 50 Ohio App. 3d 61 [553 N.E.2d 694] [while there may be no duty to an adult motorist or pedestrian, there may be one to a five-year-old child].)

In coming to this conclusion, the court in *Duval* relied on dicta in another Ohio case, *Van Jura v. Row* (1963) 175 Ohio St. 41 [191 N.E.2d 536]. In *Van Jura,* a truckdriver motioned a driver waiting to turn left in front of him to proceed with the turn; the driver did so and collided with another oncoming car in which the plaintiff was a passenger. The plaintiff sued the left-turning driver and the driver of the car in which she was riding but not the signaling truckdriver whose identity was unknown. The trial court instructed the jury that, if it found the proximate cause of the accident was

---

[6] While the issue appears to be one of first impression in California, many other states have confronted the issue and there is a distinct split of authority. (See Annot., Motorist Liability for Signaling (1993) 14 A.L.R.5th 193 (citing cases).)

the negligence of the truckdriver in motioning the left-turning driver to proceed, they must return a verdict in favor of the defendants; the jury did just that. The court in *Van Jura* held that this instruction was error. It reasoned that the left-turning driver had the nondelegable statutory duty to ascertain that the turn could be made safely and the truckdriver did not assume a duty toward the turning driver by the act of signaling: "The truck driver in the instant case could have gone forward, thus forcing [the turning driver] to wait until [oncoming traffic] was clear. He chose to signal [the turning driver] to proceed in front of him. The truck driver, in the position he found himself, owed no duty to [the turning driver]. His act was one of courtesy, not obligation. Any other view of the motion on the part of [the turning driver] can only be construed as a disregard of the rights of others lawfully on the highway." (*Id.*, 191 N.E.2d at p. 538.)

The same result has been reached by many state courts that have addressed the slightly different scenario of a driver who signals a pedestrian to cross in front of that driver's vehicle when the pedestrian is thereafter hit by a vehicle in another lane of traffic. For example, in *Hoekman, supra*, 614 N.W.2d 821, the plaintiff-pedestrian was standing in the middle of the street after crossing two lanes of southbound traffic and waiting to cross two lanes of northbound traffic when the defendant-truckdriver stopped in the lane closest to the plaintiff and motioned him to cross in front of the truck; after safely doing so, the plaintiff was struck by a car in the next lane. The South Dakota court held that the only duty the truckdriver owed the pedestrian was safe passage across the lane of traffic occupied by the truck: "While there is a split of authority on this issue, the more persuasive line of cases determine that a motorist signaling to a pedestrian or another motorist in a factual situation such as the one before us does no more than yield the right-of-way, rather than signal it is safe to proceed across another lane of traffic." (*Id.* at p. 825.)

In *Diaz v. Krob* (1994) 264 Ill.App.3d 97 [201 Ill.Dec. 799, 636 N.E.2d 1231], the plaintiff, an adult pedestrian crossing the street against a "Don't Walk" sign, was hit by a car after the defendant-school-bus-operator motioned for her to cross in front of the bus. The Illinois court found these facts did not give rise to a duty, reasoning "the magnitude of guarding against the injury and the consequence of placing that burden on the defendant weigh heavily in favor of finding no duty. An adult pedestrian with no obvious impairments should be held responsible for deciding whether gestures and directions given by a motorist can be safely followed. We simply do not believe that the instant bus driver's act of common courtesy should be transformed into a tort thereby giving the plaintiff license to proceed across an intersection against a warning light and without taking any precautions of her own." (*Id.*, 636 N.E.2d at p. 1234; but see *Luna v. Pizzas by Marchelloni* (1996) 279 Ill.App.3d 402 [216 Ill.Dec. 184, 664 N.E.2d 1112, 1114–1115] ["*Diaz* does not stand for the broad proposition that signaling drivers, as a

matter of law, may never assume a duty to act carefully when voluntarily instructing pedestrians or other motorists."].)

In *Wille v. New Orleans Public Service, Inc.* (La.Ct.App. 1975) 320 So.2d 288, a bus driver indicated to a 13-year-old girl who was waiting at a crosswalk to cross the street in front of the bus from which she had disembarked and which was stopped in the lane closest to the curb; the girl crossed safely in front of the bus but was hit by a car traveling in the lane next to the bus. The appellate court affirmed the dismissal of the bus driver's employer from the action, observing: "the circumstances of a case would have to be most unusual to find that a driver of a vehicle stopped at a pedestrian crosswalk can be placed under a duty to insure the safe crossing of a pedestrian in front of him even to the extent that the risk of such a pedestrian being struck after passing his vehicle by another vehicle is within the ambit of the first driver's duty. But even assuming that such a case might be made under unusual circumstances, those of the instant case do not support such a theory." (*Id.* at pp. 290–291.)

Although plaintiff is correct that other jurisdictions have found duty (see, e.g., *Boucher, supra*, 74 F.Supp.2d 444 [under New Jersey law, a driver who gratuitously signals another driver to facilitate that driver's course of passage assumes a duty of care]; Annot., Motorist Liability for Signaling, *supra*, 14 A.L.R.5th 193 [cases cited therein]), we believe that, for the reasons stated, the better reasoned approach is the one we adopt here.

### B. *It Was Not an Abuse of Discretion to Sustain the Demurrer Without Leave to Amend*

At oral argument, we requested the parties to brief whether plaintiff should be granted leave to amend his complaint to allege negligence per se. As we understand plaintiff's argument, it is that he should be granted leave to allege that defendant's violation of Vehicle Code section 22526 (section 22526) constituted negligence per se. Defendant counters that violation of section 22526 cannot support negligence per se. We agree with defendant.

When the trial court sustains a demurrer without leave to amend, we must " 'decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

The doctrine of negligence per se is codified at Evidence Code section 669, which in part provides: "(a) The failure of a person to exercise due care is

presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

■ Not all violations of statute constitute negligence per se. Under the doctrine, " ' "a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." ' [Citation.]" (*Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 267 [65 Cal.Rptr.3d 838].)

Applying the doctrine to violations of the Vehicle Code, courts have concluded that violation of a section that was not intended to protect against traffic accidents does not support negligence per se. For example, in *Capolungo v. Bondi* (1986) 179 Cal.App.3d 346, 351 [224 Cal.Rptr. 326] (*Capolungo*), the court held that violations of Vehicle Code sections 21458 and 22507, both of which relate to the authority of cities to enact parking regulations, did not support negligence per se because the statutes were not intended to protect against traffic accidents. By contrast, in *Thomson v. Bayless* (1944) 24 Cal.2d 543, 546 [150 P.2d 413], the court held that violation of Vehicle Code section 22504, which prohibits parking on the roadway when it is practicable to park off the highway, could support negligence per se because the statute was designed to protect persons traveling on the highway.

■ The statute at issue here, section 22526, is known as the Anti-Gridlock Act of 1987. In part it provides: "(a) Notwithstanding any official traffic control signal indication to proceed, a driver of a vehicle shall not enter an intersection or marked crosswalk unless there is sufficient space on the other side of the intersection or marked crosswalk to accommodate the vehicle driven without obstructing the through passage of vehicles from either side." That it is more similar to the statutes relating to general parking restrictions at issue in *Capolungo* than to the statute prohibiting parking on the roadway at issue in *Thomson* is demonstrated by subdivision (e) of section 22526, which expressly states that violation of section 22526 "is not a violation of law relating to the safe operation of vehicles . . . ."

Since section 22526 is expressly not related to the safe operation of vehicles, and thus not intended to protect against traffic accidents, violation of the statute does not support negligence per se. (*Capolungo, supra,* 179

Cal.App.3d at p. 351.) Accordingly, plaintiff has not established a reasonable possibility that the defect in his pleading can be cured by amendment and we find no abuse of discretion in sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Cooper, P. J., and Flier, J., concurred.