[No. A121349. First Dist., Div. Four. Dec. 18, 2009.]

MIGUEL SUAREZ et al., Plaintiffs and Appellants, v.
PACIFIC NORTHSTAR MECHANICAL, INC., Defendant and Respondent.

**COUNSEL**

Corsiglia McMahon & Allard, Bradley M. Corsiglia and Jeffry W. Lochner for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Christopher J. Nevis, Richard G. Garcia and Matthew B. Stucky for Defendant and Respondent.

**OPINION**

**RUVOLO, P. J.—**

## I.  INTRODUCTION

A subcontractor's employee, while working at a multiemployer construction site, was slightly injured by a preexisting, nonobvious hazard that had

not been created in the course of the subcontractor's work. The employee told his foreman about the incident, but the foreman did not report it to the general contractor. Shortly thereafter, two employees of the general contractor were severely injured by the same hazard.

Can the injured employees of the general contractor sue the subcontractor for negligence, based on the subcontractor's failure to warn the general contractor about the hazard? We hold that neither the common law nor the applicable construction contract created a duty on the part of the subcontractor to take affirmative steps to protect those working for other employers from hazards not created by the subcontractor.

However, we conclude that the subcontractor did have a statutory duty of care, created by applicable workplace safety statutes and regulations requiring the subcontractor to report hazards to which its employees were exposed. Under California Supreme Court case law, one who breaches such a duty is liable in tort. Accordingly, we reverse the trial court's grant of summary judgment to the subcontractor.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In January 2005, appellants Miguel Suarez and Luis Avila were working for a construction company called All Bay Contractors, Inc. (All Bay). All Bay was the general contractor on a tenant improvement project on which appellants were working (the project). All Bay hired respondent Pacific Northstar Mechanical, Inc. (PNM), as a subcontractor to install only the heating, ventilation, and air-conditioning (HVAC) components of the project.

Before appellants began working on the project, an unguarded electrical circuit, to which an ungrounded light fixture (the ungrounded fixture) was wired, was installed on the premises on which appellants were working. Neither All Bay nor any of the subcontractors on the project, including PNM, had been hired to do any work with the ungrounded fixture, and PNM did not install it.

On January 14, 2005, during the course of appellants' work on the project, Suarez climbed to the top of a ladder inside the building that was being remodeled, so as to make some marks on the ceiling, and grabbed an I-bolt to steady himself while on the ladder. Meanwhile, Avila was standing on the floor holding the ladder. Unbeknownst to Suarez, the light fixture that was hanging from the I-bolt he grabbed was the ungrounded fixture. When Suarez grabbed the I-bolt, he immediately received an electric shock, fell off the ladder, and landed on Avila, resulting in injuries to both men.

On November 18, 2005, appellants filed a complaint in San Mateo County Superior Court against the owner of the property on which the project was located. The complaint alleged two causes of action: one for premises liability, and one for general negligence.

On March 5, 2007, appellants filed an amendment to their complaint substituting PNM for a fictitious defendant. On May 21, 2007, appellants filed an amended complaint alleging that the ungrounded fixture that caused their injuries was installed by the previous owners of the property, who had failed to disclose the latent hazard to the defendant that owned the property at the time of the project. The amended complaint also alleged that before appellants were injured, a PNM employee encountered the ungrounded fixture and failed to report the problem to other contractors or to the property owner.

On August 23, 2007, PNM filed a motion for summary judgment, or, in the alternative, for summary adjudication of issues. In support of its motion, PNM relied on the following facts: PNM did not own, lease, occupy or control the property where the accident occurred; PNM's work on the HVAC installation did not create any dangerous conditions at the project; PNM was not hired to inspect or work on the ungrounded fixture; and PNM did not work on or use the ungrounded fixture.

In their opposition to the motion, appellants did not dispute these facts. However, appellants introduced evidence that approximately three weeks before they were injured, PNM's employees were working in the room where the ungrounded fixture was located, and that PNM learned of the dangerous condition at this time, and did not warn anyone about it or correct the problem. Specifically, appellants produced evidence that a PNM employee named Rafael Campos, Jr. (Campos Jr.), suffered an electric shock from the ungrounded fixture while PNM's workers were in the location, receiving only minor injuries. Appellants also produced evidence that a PNM foreman (who happened also to be Campos Jr.'s father, Juan Rafael Campos (Campos Sr.)) knew about Campos Jr.'s injury before appellants were injured.[1]

In their opposition to the summary judgment motion, appellants introduced evidence supporting the contention that before appellants were injured, no

---

[1] PNM objected to this evidence in the trial court, contending that because the sole issue raised by the summary judgment motion was one of duty, the evidence of PNM's knowledge about the ungrounded light fixture was irrelevant. Appellants objected on the same ground to a statement in the declaration of PNM's owner that PNM did *not* know about the ungrounded light fixture before appellants were injured. The trial court sustained these objections, except as to one which incorrectly identified the evidence to which the objection was made. The effect of this ruling on the issues on appeal is discussed *post.*

one at PNM informed All Bay, or anyone else in authority at the project, about any injury to Campos Jr., or about the existence of the ungrounded fixture. In its reply papers, PNM contended that these facts were irrelevant, but did not dispute them.

Appellants also relied on deposition testimony from Campos Jr., Campos Sr., and PNM's owner to the effect that they each had an obligation to report the existence of safety hazards at the jobsite to All Bay. PNM's owner testified that one purpose of PNM's policy of requiring such reports was to protect all of the workers at the jobsite, not just those employed by PNM.

The motion for summary judgment was heard on November 7, 2007. On December 27, 2007, the trial court entered a formal order granting PNM's motion for summary judgment, and ruling on the parties' respective evidentiary objections. On February 26, 2008, the court entered judgment in favor of PNM. This timely appeal ensued.

## III. DISCUSSION

Appellants acknowledge that their premises liability cause of action does not lie against PNM, and that the trial court properly granted summary judgment in PNM's favor on that cause of action. Thus, the sole issue on appeal is whether summary judgment was properly granted as to appellants' cause of action against PNM for negligence.

### A. Standard of Review

"We review a summary judgment motion de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. [Citations.] We are not bound by the trial court's stated reasons or rationales. [Citation.] 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' [Citation.] Thus, we independently determine the construction and effect of the facts presented to the trial judge as a matter of law. [Citation.] Summary judgment is a drastic remedy to be used sparingly, and any doubts about the propriety of summary judgment must be resolved in favor of the opposing party. [Citations.]" (*Mateel Environmental Justice Foundation v. Edmund A. Gray Co.* (2003) 115 Cal.App.4th 8, 17 [9 Cal.Rptr.3d 486].)

When reviewing a trial court's decision granting summary judgment to a defendant, we, "[l]ike the trial court, . . . view the evidence in the light most favorable to the opposing party [i.e., the plaintiff] and accept all inferences reasonably drawn therefrom. [Citation.]" (*Hinesley v. Oakshade Town Center*

(2005) 135 Cal.App.4th 289, 294 [37 Cal.Rptr.3d 364].) We use the same three-step analysis as the trial court: (1) identifying the issues framed by the pleadings; (2) determining whether the defendant negated the plaintiff's claims; and (3) deciding whether the plaintiff demonstrated the existence of a triable, material factual issue. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].)

## B. Negligence and Duty of Care

■ "Actionable negligence is traditionally regarded as involving the following: (1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury." (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 835, p. 52.) " ' "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court." [Citations.]' [Citation.]" (*Paz v. State of California* (2000) 22 Cal.4th 550, 559 [93 Cal.Rptr.2d 703, 994 P.2d 975]; see also *Gilmer v. Ellington* (2008) 159 Cal.App.4th 190, 195–196 [70 Cal.Rptr.3d 893].)

As appellants recognize, it is undisputed that PNM had nothing to do with the installation of the ungrounded fixture that resulted in their injury. However, for purposes of this summary judgment appeal, we must accept appellants' factual assertion that before appellants were injured, PNM acquired actual knowledge of the hazard posed by the ungrounded fixture, due to the injury it caused to Campos Jr. Appellants' cause of action against PNM is premised on the contention that despite this knowledge, PNM neither informed All Bay about the hazard, nor took any other action to protect others from the danger.[2]

■ Under standard common law tort principles, "[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action

---

[2] As already noted, the trial judge sustained, on relevance grounds, both parties' objections to the evidence regarding PNM's state of knowledge about the ungrounded fixture. Appellants at least implicitly argue this ruling was in error, because their arguments for the existence of a tort duty are all premised on the assumption that PNM knew about the ungrounded fixture prior to appellants' accident. PNM's brief on appeal does not object to appellants' reliance on this fact, nor does it argue that the evidence regarding it was properly excluded. We agree with appellants that the trial court erred in sustaining objections to this specific evidence, and we therefore consider it for purposes of this appeal. PNM characterizes this fact as disputed, but does not contend that appellants' evidence was insufficient to raise a triable issue of material fact. Under the applicable standard of review, therefore, we must accept appellants' factual assertion as true. (*Hinesley v. Oakshade Town Center, supra,* 135 Cal.App.4th at p. 294.)

to assist or protect another unless there is some relationship between them which gives rise to a duty to act. [Citations.]" (*Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].) "Liability for nonfeasance is limited to situations in which there is a special relationship that creates a duty to act. [Citations.] 'The basic idea is often referred to as the "no duty to aid rule," which remains a fundamental and long-standing rule of tort law. . . . "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." ' [Citation.]" (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1202–1203 [119 Cal.Rptr.2d 160] (*Seo*).)

■ Thus, the first issue presented by this appeal is whether PNM, as a subcontractor on a multiemployer construction site, had a common law duty to appellants, who were not its own employees, to take action to protect them from a nonobvious hazard in the workplace that PNM knew about, but did not create. At common law, certain special relationships were recognized as creating an affirmative duty to take action to assist or protect another, such that a failure to act could give rise to a tort cause of action. Examples of these traditional special relationships include that between common carriers and their passengers; that between innkeepers and their guests; and that between a school district and its students. (*Seo, supra*, 97 Cal.App.4th at p. 1203.)

The common law did not, however, recognize such a special relationship between an employer, such as PNM, and the employees of another employer who are present at the same worksite. Appellants do not argue otherwise. Instead, they invite this court to extend the general common law concept of duty arising from a special relationship to the present situation. We decline to do so. "Because the traditional weighing process using the seven factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561], 'has already been done by courts over the centuries in formulating the "no duty to aid" rule' in the context of liability for nonfeasance, it is not necessary to engage in the weighing process in a particular case. [Citation.]" (*Seo, supra*, 97 Cal.App.4th at p. 1203.)

The common law does recognize, however, that a special relationship of the type that gives rise to a duty to take affirmative action to protect another may be created by contract, or by a statute or government regulation. (*Seo, supra*, 97 Cal.App.4th at p. 1203; see also *Elsner v. Uveges* (2004) 34 Cal.4th 915, 927, fn. 8 [22 Cal.Rptr.3d 530, 102 P.3d 915] ["Statutes may be borrowed in the negligence context . . . to establish a duty of care . . ."].) In the present case, appellants argue that both by virtue of the contract between

PNM and All Bay, and under certain statutes and regulations governing workplace safety, once PNM discovered a latent hazard at the project worksite, PNM had a duty to appellants to disseminate a warning about the hazard. We next turn to these alternative theories of duty.

### C.   Contract As Source of Duty

The contract between All Bay and PNM included a paragraph entitled "precautions" (precautions provision) that addressed PNM's duties with regard to safety on the project. The precautions provision read in its entirety as follows: "[PNM] shall promptly take all precautions which are necessary and adequate against any conditions created during the progress of the work which conditions involve a risk of bodily harm to others or a risk of damage to property, including the property of [the premises owner] and [All Bay]. [PNM] shall continuously inspect the work and all facilities utilized by [PNM] in performing the work to discover and determine any such conditions. [PNM] shall take all precautions to protect the work of [All Bay] or other subcontractors from damage arising from the performance of, or failure to perform the work." (Capitalization omitted.)

The existence and language of the contract are undisputed, and neither party has proffered disputed extrinsic evidence relating to its meaning. Accordingly, the proper interpretation of the contract is a question of law for the court, and our standard of review on this issue is de novo. (*Roden v. AmerisourceBergen Corp.* (2007) 155 Cal.App.4th 1548, 1561 [67 Cal.Rptr.3d 26]; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 741, pp. 827–829.)

It is not disputed that the "conditions" which injured appellants (i.e., the ungrounded fixture) were not "created during the progress of the work," nor were they "facilities utilized by [PNM] in performing the work." As we read the contract, that means that these conditions did not fall within the ambit of the phrase "such conditions" in the contractual provision requiring PNM to "continuously inspect the work . . . to discover and determine any such conditions." Accordingly, we agree with PNM that the language of the precautions clause cannot be read as creating a tort duty on PNM's part to protect the employees of All Bay from a hazard at the project worksite that was not created by any act or omission of PNM during the course of its own work on the HVAC system.

### D.   Statutes and Regulations As Source of Duty

As already noted, the existence of a tort duty may be premised on a statute or regulation requiring the defendant to act in a particular manner. (*Elsner v. Uveges, supra,* 34 Cal.4th at p. 927.) In 1999, the Legislature

amended Labor Code section 6304.5[3] to provide that the statutes governing workplace safety (§ 6300 et seq.; California Occupational Safety and Health Act of 1973 (Cal-OSHA)), as well as "occupational safety and health standards adopted under [Cal-OSHA]," are admissible under Evidence Code sections 452 and 669 "in the same manner as any other statute, ordinance, or regulation." (Stats. 1999, ch. 615, § 2, underscoring omitted.)

In 2004, after thorough consideration of the legislative history of the amendment, the California Supreme Court concluded that under the current version of the statute, "plaintiffs may use Cal-OSHA provisions to show a duty or standard of care to the same extent as any other regulation or statute, whether the defendant is their employer or a third party." (*Elsner v. Uveges, supra,* 34 Cal.4th at pp. 935–936.) Thus, in its current form, section 6304.5 "codifies the common law doctrine of negligence per se, pursuant to which statutes and regulations may be used to establish duties and standards of care in negligence actions." (34 Cal.4th at p. 927, fn. omitted.)

Appellants argue that PNM had a duty of care to them under section 6400, which is also part of Cal-OSHA. That section provides: "(a) Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein. [¶] (b) On multiemployer worksites, both construction and nonconstruction, citations may be issued only to the following categories of employers when the division has evidence that an employee was exposed to a hazard in violation of any requirement enforceable by the division[4]: [¶] (1) The employer whose employees were exposed to the hazard (the exposing employer). [¶] (2) The employer who actually created the hazard (the creating employer). [¶] (3) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite, which is the employer who had the authority for ensuring that the hazardous condition is corrected (the controlling employer). [¶] (4) The employer who had the responsibility for actually correcting the hazard (the correcting employer). [¶] The employers listed in paragraphs (2) to (4), inclusive, of this subdivision may be cited regardless of whether their own employees were exposed to the hazard."

Assuming that Campos Jr. was injured by contact with the ungrounded fixture, PNM would qualify as an "exposing employer" under section 6400, subdivision (b)(1), as one whose "employees were exposed to the hazard." PNM argues that this language "plain[ly]" applies only to an employer's own employees, and "not to other persons who are exposed after a [PNM]

---

[3] All further statutory references are to the Labor Code unless otherwise noted.

[4] Appellants cite regulations indicating that the ungrounded fixture was a hazard within the meaning of section 6400, and PNM does not argue otherwise. For purposes of this appeal, we will assume that the ungrounded fixture violated Cal-OSHA's workplace safety requirements.

employee has been exposed." We do not agree that the language of the statute makes it clear that an exposing employer—in contrast to the other categories of citable employers listed in the statute—has no duty to protect employees other than its own employees from exposure to worksite hazards. In particular, the statute says that "citations may be issued only to the following categories of employers when the division has evidence that *an* employee [not *their* employee] was exposed to a hazard . . . ," clearly implying coverage broader than that suggested by PNM. (§ 6400, subd. (b), italics added.)

█    Appellants refer to a Cal-OSHA regulation, California Code of Regulations, title 8, section 336.11 (regulation 336.11) that is also consistent with a broader reading of the statute.[5] Under regulation 336.11, an employer who would otherwise be subject to the issuance of a citation for a violation of section 6400, subdivision (b)(1), can avoid being cited if the employer can satisfy each of five conditions. Specifically, as relevant to the facts of the present case, an employer who is an "exposing employer" under section 6400, subdivision (b)(1), can avoid being cited if the employer "can demonstrate that the creating, the controlling and/or the correction employers, as appropriate, were specifically notified or were aware of the hazards to which his/her employees were exposed." The reference in regulation 336.11 to the "exposing employer" notifying the "creating employer" about the hazard makes clear that an exposing employer can be cited for failing to give notice of a hazard even if the exposing employer did not create it.

Thus, appellants argue that regulation 336.11 impliedly imposes a duty on an employer at a multiemployer worksite, after its employee has been exposed to a hazard that it did not create, to "specifically notif[y]" another employer that is in a position to rectify the situation about the hazard. Appellants contend that, when sections 6304.5 and 6400, subdivision (b), and regulation 336.11 are read together, they create a duty to notify about known hazards, a breach of which not only renders the offending employer citable,

---

[5] Regulation 336.11 reads in its entirety as follows: "Prior to issuing any citation to an exposing employer, the Division shall first determine whether available information indicates that the employer meets each of the defenses listed below. If the Division concludes that all five defenses have been met, the citation shall not be issued. These defenses are: [¶] (a) The employer did not create the hazard. [¶] (b) The employer did not have the responsibility or the authority to have the hazard corrected. [¶] (c) The employer did not have the ability to correct or remove the hazard. [¶] (d) The employer can demonstrate that the creating, the controlling and/or the correction employers, as appropriate, were specifically notified or were aware of the hazards to which his/her employees were exposed. [¶] (e) The employer took appropriate feasible steps to protect his/her employees from the hazard, instructed them to recognize the hazard and, where necessary, informed them how to avoid the dangers associated with it. For the purposes of this section, where an extreme hazard is involved, appropriate feasible steps include removing the employer's employees from the job, if there is no other way to protect them from the hazard." (Reg. § 336.11.)

but also constitutes actionable negligence, whether or not the injured party is the employer's own employee.

While our reading of section 6400 appears to support appellants' view, in the absence of controlling, or even persuasive, authority on this issue,[6] we turn, as the high court did in *Elsner v. Uveges, supra*, 34 Cal.4th 915, to the legislative history of the 1999 amendments to the Cal-OSHA statutory scheme.[7] Both section 6304.5 and section 6400 were amended by the same bill, Assembly Bill No. 1127 (1999–2000 Reg. Sess.) (Assembly Bill 1127). (Stats. 1999, ch. 615, §§ 2, 4; see *Elsner v. Uveges, supra*, 34 Cal.4th at p. 934.) Assembly Bill 1127 was "an omnibus measure intended to increase civil and criminal sanctions against those who maintain unsafe working conditions." (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 929.) The bill was "designed to prevent injuries and close loopholes in various laws relating to workplace safety standards. [Citation.]" (*Ibid.*) The "repeal of the ban on using Cal-OSHA provisions in wrongful death and personal injury law-suits . . . was included [in the bill] as part of the expansion of civil remedies available for violation of safety standards." (*Id.* at p. 930.)

"The net effect of the proposed reforms [included in Assembly Bill 1127] was to increase significantly the sanctions available against those in control of workplace safety, with the goal of deterring unsafe practices and reducing the number and severity of future accidents. This overall purpose is consistent with . . . the plain language of the amendments [to section 6304.5] allowing Cal-OSHA provisions in third party suits and thereby facilitating private suits against workplace tortfeasors. [Citation.]" (*Elsner v. Uveges, supra*, 34 Cal.4th

---

[6] As PNM points out in its respondent's brief, all of the cases on which appellants rely involved tort actions against a defendant that had affirmatively contributed to the creation of the danger that injured the plaintiff. (See *Johnson v. Nicholson* (1958) 159 Cal.App.2d 395 [324 P.2d 307] [defendant general contractor told plaintiffs, employees of cleaning subcontractor, to clean floor with gasoline, even though general contractor knew tile subcontractor would be using blowtorch nearby; defendant tile subcontractor continued to use blowtorch even after smelling gasoline]; *Darnold v. Voges* (1956) 143 Cal.App.2d 230 [300 P.2d 255] [defendants, who were in control of milking barn, invited photographer to shoot flash pictures in barn, which startled cow and caused it to injure plaintiff milker]; *Perry v. D. J. & T. Sullivan, Inc.* (1933) 219 Cal. 384 [26 P.2d 485] [defendant subcontractor unfastened supports holding ladder, and later invited plaintiff, employee of general contractor, to ascend ladder]; *Rincon v. ABC Cutting Contractors, Inc.* (Fla.Dist.Ct.App. 1997) 706 So.2d 322 [defendant subcontractor cut hole through which plaintiff, employee of another subcontractor, later fell]; *Keene v. Chicago Bridge and Iron Co.* (Fla.Dist.Ct.App. 1992) 596 So.2d 700 [defendant painting contractor placed heavy equipment on pile of coating subcontractor's scaffolding boards; equipment later fell and injured plaintiff, employee of coating subcontractor].) None of these cases involved a fact situation like that in this case, in which the sole basis for the tort cause of action is defendant's failure to warn others about the existence of a hazard that defendant had no role in creating.

[7] As the Supreme Court did in *Elsner v. Uveges, supra*, 34 Cal.4th at page 929, footnote 10, we take judicial notice of this legislative history.

at p. 930.) Section 6304.5 was enacted in order to " 'change existing law to make [Cal-OSHA] statutes and regulations . . . admissible in personal injury and wrongful death lawsuits so that litigants in these actions could use these provisions as standards for determining negligence.' . . ." (34 Cal.4th at p. 934, quoting Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Assem. Bill 1127 (1999–2000 Reg. Sess.) prepared for Governor Davis (Sept. 1999) p. 1.)

We note too that when the Legislature intended to limit the applicability of Cal-OSHA in creating tort duties, it knew how to accomplish that goal. Thus, as the Supreme Court explained in *Elsner v. Uveges*, Assembly Bill 1127 was amended during the course of its consideration by the Legislature to make it clear that the change in section 6304.5 was not intended to authorize injured workers to sue the State of California based solely on its failure to comply with its duty to inspect workplace facilities to ensure their safety. (*Elsner v. Uveges, supra*, 34 Cal.4th at pp. 932–934.) No such limitation appears in the statute regarding suits against nongovernmental defendants for their failure to comply with the duty under regulation 336.11 to report workplace hazards to the controlling employer at a multiemployer worksite. On the contrary, "[i]n general, plaintiffs may use Cal-OSHA provisions to show a duty or standard of care to the same extent as any other regulation or statute, *whether the defendant is their employer or a third party.*" (*Elsner v. Uveges, supra*, 34 Cal.4th at pp. 935–936, italics added.) The provision barring suits against the state for failing to act in its regulatory capacity is "[t]he *lone* exception" to this general rule. (*Id.* at p. 936, italics added.)

█ "Under the standard rules of statutory construction, we will not read into the statute a limitation that is not there. [Citation.]" (*People v. Bautista* (2008) 163 Cal.App.4th 762, 777 [77 Cal.Rptr.3d 824]; see also *Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 826 [65 Cal.Rptr.3d 251] ["it is not the court's place to insert words into [a] statute"].) Specifically, " '[u]nder the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' [Citation.]" (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 424 [15 Cal.Rptr.3d 643, 93 P.3d 260].) █ Accordingly, we decline to construe section 6304.5 to contain an implied exception, limiting the liability of third party employers at multiemployer worksites, to the right of an injured worker to rely on a Cal-OSHA regulation as the source of a duty in a negligence action.

Lastly, and as already noted, section 6400 was enacted as part of the same 1999 bill that amended section 6304.5 (Stats. 1999, ch. 615, §§ 2, 4), and with the same goal of "expand[ing] civil and criminal penalties for failure to

maintain a safe workplace." (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 935.) The 1999 amendments to section 6400 codified an already existing Cal-OSHA regulation, California Code of Regulations, title 8, section 336.10, which still appears in the regulations, and immediately precedes regulation 336.11. (See *Elsner v. Uveges, supra*, 34 Cal.4th at pp. 934–935.) When the Legislature enacted the amendments, workers' compensation liability and sanctions under Cal-OSHA already existed for exposing employers whose *own* employees were injured by a workplace hazard.[8] Therefore, the express purpose of the amendments would be defeated, and there would be virtually no advance on the goal to expand "civil and criminal penalties for failure to maintain a safe workplace" (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 935), if the intent of the Legislature was that the duty owed by exposing employers was limited to their own employees.

In response to appellants' reliance on section 6400 and regulation 336.11, PNM points to subdivision (c) of section 6400. That provision reads in full as follows: "It is the intent of the Legislature, in adding subdivision (b) to this section, to codify existing regulations with respect to the responsibility of employers at multiemployer worksites. Subdivision (b) of this section is declaratory of existing law and shall not be construed or interpreted as creating a new law or as modifying or changing an existing law." PNM argues that the second sentence of this subdivision should be read to preclude the use of section 6400, subdivision (c) as the basis for any tort duty that did not exist prior to the passage of Assembly Bill 1127.

■ We disagree. As the Supreme Court opined in *Elsner v. Uveges*, in response to the same argument, the second sentence of subdivision (c) of section 6400 "plainly refers only to the changes made to section 6400,

---

[8] California has long had a workers' compensation system providing for "a compulsory scheme of employer liability, irrespective of fault, for injuries that arise out of and in the course of employment . . . ." (2 Witkin, Summary of Cal. Law, *supra*, Workers' Compensation, § 5, p. 540; see generally *id.*, §§ 4, 5, pp. 538–541.) The Cal-OSHA statutory and regulatory scheme, which provides for citations of employers, and for their civil and criminal liability for violations of Cal-OSHA safety standards, has been in effect since obtaining federal approval in 1973. (3 Witkin, Summary of Cal. Law, *supra*, Agency and Employment, § 364, p. 460; see generally *id.*, § 366, pp. 462–464; *Lusardi Construction Co. v. California Occupational Safety & Health Appeals Bd.* (1991) 1 Cal.App.4th 639 [2 Cal.Rptr.2d 297].) As noted in the Legislative Counsel's Digest of Assembly Bill 1127, "[e]xisting law [prior to the enactment of Assembly Bill 1127] provide[d] that the provisions of [Cal-OSHA] . . . may not be considered in . . . any personal injury or wrongful death action . . . *except* as between an employee and his or her employer." (<http://www.legisinfo.ca.gov/pub/99-00/bill/asm/ab_1101-1150/ab_1127_bill_19991010_chaptered.pdf> [as of Dec. 18, 2009], italics added.) Similarly, the Legislative Counsel's Digest of Assembly Bill 1127 noted that existing law made employers guilty of a misdemeanor for a knowing or negligent serious violation of any Cal-OSHA statute or regulation. (*Ibid.*)

subdivision (b), which codified an existing Cal-OSHA regulation (see Cal. Code Regs., tit. 8, § 336.10); it does not apply to any other section of [Assembly Bill 1127]. As discussed throughout the bill's legislative history, the purpose of the bill was to change existing law and specifically to expand civil and criminal penalties for failure to maintain a safe workplace. When the Legislature amends a statute, we will not presume lightly that it 'engaged in an idle act.' [Citation.] Thus, we reject the assertion that despite having substantially reworked the language of section 6304.5, the Legislature intended no change in the law." (*Elsner v. Uveges, supra*, 34 Cal.4th at pp. 934–935.)

■ In other words, the sole purpose of section 6400, subdivision (c) was to insure that the substantive content of the workplace safety standards set forth in section 6400, subdivision (b) would be construed as a codification of the preexisting regulations. Our decision that appellants can premise a tort cause of action on a violation of those safety standards is based on the amendments made by Assembly Bill 1127 to section 6304.5, *not* on the amendments to section 6400 itself.[9] Thus, section 6400, subdivision (c) does not preclude us from interpreting section 6304.5 as creating a tort duty on the part of employers to comply with the safety standards codified in section 6400, subdivision (b).

■ For all of the foregoing reasons, we agree with appellants' interpretation of section 6400 and regulation 336.11. Read together, and in light of the legislative history of the amendments to sections 6304.5 and 6400, these two Cal-OSHA provisions impose a duty on each employer, at a multiemployer worksite, to report all nonobvious hazards about which the employer learns because its employees were exposed to them during the course of their work, even if the employer in question did not create the hazard. Moreover, a breach of that duty is actionable in tort by any worker at the site who is subsequently injured by the hazard that was not reported.

Based on the foregoing analysis, we conclude that the trial court erred in granting summary judgment in PNM's favor. To the extent that appellants' negligence cause of action is based on PNM's alleged breach of section 6400 and regulation 336.11, PNM did not establish that it was entitled to judgment as a matter of law based on undisputed material facts.

---

[9] As already noted, *Elsner v. Uveges*, held that the amendments to section 6304.5 were intended to "codif[y] the common law doctrine of negligence per se, pursuant to which *statutes and regulations may be used to establish duties* and standards of care in negligence actions." (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 927, fn. omitted, italics added.)

## IV. DISPOSITION

The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. Appellants are awarded their costs on appeal.

Reardon, J., and Rivera, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 10, 2010, S179825.