Filed 1/16/15  Hanna v. Tamura Designs CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARK HANNA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TAMURA DESIGNS, INC.,<br><br>    Defendant and Respondent. | H039214<br>(Santa Clara County<br>Super. Ct. No. CV177293) |
| MARK HANNA et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>SIERRA LUMBER & FENCE<br>COMPANY, INC., et al.,<br><br>    Defendants and Respondents. | H039444<br>(Santa Clara County<br>Super. Ct. No. CV177293) |

After plaintiff Mark Hanna was severely injured at a construction site, he brought an action for negligence, premises liability, and negligence per se against defendants Harwood Construction Fine Home Builders, Inc. (Harwood), Lemon Orchard LLC (Lemon Orchard), Adorno Construction, Inc. (Adorno), Tamura Designs, Inc. (Tamura), and Sierra Lumber & Fence Company, Inc. (Sierra).  The trial court granted the motions

for summary judgment brought by Sierra and Tamura and entered judgment in their favor. After Hanna entered into a settlement agreement with Harwood, Lemon Orchard, and Adorno he was assigned their cross-claims against Sierra and Tamura. On appeal, Hanna contends that there were triable issues of fact as to whether Tamura and Sierra breached their duties to him. Hanna also contends that the trial court erred in concluding that Sierra did not owe equitable contribution to Harwood and Adorno.[1] We find no error and affirm the judgment.[2]

## I.  Procedural and Factual Background

### A.  Complaint

In July 2010, Hanna filed a complaint for negligence and premises liability against Harwood and Lemon Orchard. The cause of action for negligence alleged that on January 30, 2010, Hanna stepped onto some plywood at a construction site, fell into a light well, and sustained severe injuries. It was also alleged that Harwood and Lemon Orchard owed a duty to Hanna to maintain and control the premises in a safe manner, they breached their duties to him, and as a result of defendants' negligence, Hanna sustained harm. Hanna later amended his complaint to include Tamura and Sierra as defendants.[3]

In April 2012, Hanna filed a first amended complaint and added a third cause of action for negligence per se. Hanna alleged the following facts. Lemon Orchard was the

---

[1]    Tamura's motion for summary judgment did not address the claims brought by Harwood, Lemon Orchard, and Adorno.

[2]    This court denied the motion to consolidate case Nos. H039214 and H039444, but ordered that the two appeals would be considered together for purposes of briefing, oral argument, and decision.

[3]    Hanna does not challenge the summary judgment entered in favor of Tamura and Sierra as to the premises liability cause of action.

owner of the construction project, which consisted of a single-family residence at 438 Addison Avenue in Palo Alto. Defendant Dennis Hallmark, an individual doing business as Audio Video Installations Plus (Audio), contracted with Lemon Orchard to install security and fire protection systems on the project. Hallmark then hired Hanna to provide these services. Each defendant had "a legal duty to cover, secure and otherwise protect the light well and area adjacent thereto so as to make it safe and prevent persons . . . from falling into the shaft of the light well" and to warn Hanna of the existence of the light well. Defendants, with the exception of Lemon Orchard, also failed to fulfill their duty to comply with applicable laws, ordinances, and regulations, including California Code of Regulations sections 1621 and 1632. As a result of defendants' negligent conduct, Hanna suffered damages.

### B. Cross-complaints

Harwood and Adorno filed cross-complaints against Sierra and Tamara while Sierra and Tamara filed cross-complaints against each other. The cross-complaints alleged causes of action for express indemnity, equitable indemnity, apportionment, and contribution.

### C. Partial Settlement

In November 2012, Hanna entered into a settlement agreement with Harwood, Lemon Orchard, and Adorno. Pursuant to this agreement, Harwood, Lemon Orchard, and Adorno assigned their claims against Tamura and Sierra to Hanna. Hanna then dismissed his claims against Harwood, Lemon Orchard, and Adorno.

### D. Summary Judgment Motions by Tamura and Sierra

In July 2012, Tamura filed a motion for summary judgment while Sierra filed its motion for summary judgment or, alternatively, summary adjudication in November

3

2012. To support their motions, Tamura and Sierra submitted evidence establishing the following facts. The Addison Avenue site was owned by Lemon Orchard, who contracted with Harwood for the construction of a single-family residence. Harwood contracted with Adorno to pour the concrete foundation for the house. The construction of the foundation included the construction of a light well, which was poured in 2009. The plans required a metal guard to be installed around the light well, which was on the northeastern side of the house. After Adorno completed its work on the project, Harwood assumed responsibility for covering the light well.

However, there was no metal guard surrounding the light well when the accident occurred. Emil Lehan, an employee for Harwood, used two pieces of plywood that he had found lying around the job site to cover the light well. Lehan was not aware of the prior use of the plywood. One of the pieces of plywood was smaller than the opening of the light well and was placed under the larger piece of plywood. Neither piece of plywood fully extended over the edge of the concrete lip surrounding the light well opening. The plywood was not secured to either the ground or the light well. When Lehan stepped on the plywood covering, he indicated that it bent but that it held his weight. Lehan removed and reinstalled the plywood cover many times the week of January 25, 2010. Lehan covered the light well with two pieces of plywood the night before Hanna's accident. Harwood did not post caution tape, use fluorescent spray paint, or place orange cones to alert workers to the presence of the light well. Harwood described the light well as having been "improperly covered."[4]

_____

[4]     Pursuant to California Code of Regulations, title 8, section 1632, Harwood was responsible for ensuring that the light well opening was safely "guarded by either temporary railings and toeboards or by covers." (Cal. Code Regs., tit. 8, § 1632, subd. (b)(1).) The covers "shall be capable of safely supporting the greater of 400 pounds or twice the weight of the employees, equipment and materials that may be imposed on any one square foot area of the cover at any time. Covers shall be secured in place to prevent accidental removal or displacement, and shall bear a pressure sensitized,

(*continued*)

4

Harwood contracted with Tamura to install landscaping, which included the construction of fences on the property. Tamura's contract with Harwood did not address the covering of the light well. Prior to the accident, Irving Tamura spoke to two Harwood employees about the covering for the light well and commented that it looked "flimsy" and did not look "secure."

Tamura contracted with Sierra to build fences on the site. On the day of the accident, Francisco Puente and Alejandro Rodriguez, Sierra employees, were finishing two gates at the site. Rodriguez was working on the fence immediately adjacent to the light well. Neither Puente nor Rodriguez moved the plywood cover. Puente knew that there was a light well beneath the plywood, but Rodriguez did not know of its existence until Hanna fell into it. When Rodriguez, who weighed approximately 140 pounds, stood on the plywood covering the light well for approximately 40 seconds on the day of the accident, he noticed that it gave slightly. Irving Tamura did not warn the Sierra employees about the light well. Sierra's employees did not see Hanna approach the light well or its plywood cover prior to the accident.

Hallmark hired Hanna to trim the wiring of the control panel to the alarm system installed by Audio. On the day of the accident, Hanna was accompanied by Robert Costanza, a Hallmark employee, to the construction site.

### E. Opposition to the Motions for Summary Judgment

Hanna disputed that neither of the Sierra employees moved the plywood covering the light well on the day of his accident. He relied on the following facts. Lehan placed the plywood over the light well at the end of the workday on the evening before the day

---

painted, or stenciled sign with legible letters not less than one inch high, stating: 'Opening -Do Not Remove.' Markings of chalk or keel shall not be used." (Cal. Code Regs., tit. 8, § 1632, subd. (b)(3).) California Code of Regulations, title 8, sections 1620 and 1621 set forth the requirements for railings and toeboards.

of the accident. Lehan weighed 225 to 230 pounds, which was 20 to 25 pounds more than Hanna. Lehan stood on the plywood covering to test its strength. When Hanna fell into the light well, the only other people present were Puente and Rodriguez.

No one was allowed on the job site on a Saturday unless Lehan was present. Since Sierra employees had placed a fence in the wrong location, Lehan had informed both Tamura and Sierra that Sierra employees were not allowed on the job site without supervision.

Hanna also submitted the declarations of Louis Y. Cheng, an accident reconstruction engineer, and David Ross, a consultant who specialized in construction-related matters. According to Cheng, "the plywood boards were probably positioned with little support on the side of the fence at the time of the accident. That support gave way when Mr. Hanna stepped on the board. When Mr. Lehan tested and reinstalled the plywood boards before the accident, the boards were most probably positioned such that there was sufficient support at both ends. In fact, Mr. Lehan testified that the cover supported his weight. Therefore, the position of the plywood boards at the time of the accident was most likely different from the position placed by Mr. Lehan when he left the job site the day before the accident. These boards were probably moved away from the fence to the compromised position of the boards at the time of the accident." According to Ross, "[a]ll of the contractors whose scope of work required them to have employees work in the immediate vicinity of the light well should have made certain that fall protection surrounding the 'light well' was in place." He stated that the subcontract between Tamura and Harwood required Tamura to comply with all safety and Cal-OSHA regulations with respect to its employees and the employees of others under its subcontract.

6

### F. Tamura's Reply to Opposition to the Motion for Summary Judgment

Tamura argued that it owed no duty to Hanna based on affirmative acts. Tamura further argued that any duty to warn of the dangerous condition was discharged when Irving Tamura informed two Harwood employees of the inadequate cover. Tamura also claimed that it owed no contractual or statutory duty to Hanna.

### G. Sierra's Reply to Opposition to the Motion for Summary Judgment

Sierra argued that there was no evidence that Lehan tested the strength of the cover the evening before the accident. Lehan testified that he believed that the cover would support his weight because he "stood on it, gave it a little bounce after [he] secured it" the week of January 25. Assuming the plywood had been moved, Sierra also pointed out that other subcontractors had access to the construction site and could have disturbed the plywood cover after Lehan secured it and before the accident. Sierra further argued that Cheng's expert opinion did not support a finding of negligence by Sierra. Sierra points out that Cheng relied on cell phone photographs, did not examine the plywood boards, and did not consider the dimensions of the plywood boards or that the boards did not cover the opening. Sierra also argued that Cheng's opinion that the plywood did not break when Hanna stepped on it, but instead broke when he landed on it at the bottom of the light well on the ground was not supported by the evidence. Sierra pointed out that Hanna testified that when both of his feet were on the plywood, he "heard cracking and the falling sensation, almost simultaneously."

### H. Trial Court's Rulings

In October 2012, the trial court granted Tamura's motion for summary judgment. The trial court found that Tamura "owed no common law or statutorily implied duty of care to Plaintiff in connection with the maintenance of the plywood cover over the light well. Moreover, even assuming for the sake of argument that such a duty was owed,

Tamura has established that there was no negligent conduct on its part that caused or contributed to Plaintiff's injuries.  The act of a fence installation worker stepping on the cover that was put in place by Harwood with the knowledge that people would walk over it and the intention that they could do so safely is not a negligent act."  The trial court also found that Tamura had discharged its duty to report nonobvious hazards by notifying Harwood.

In February 2013, the trial court granted Sierra's motion for summary judgment.  The trial court made the same findings regarding the negligence cause of action as it had in its order granting Tamura's summary judgment motion.  The trial court also granted Sierra's motion for summary judgment as to the cross-complaints for express indemnity, equitable indemnity, and contribution filed by Harwood and Adorno.

## II.  Discussion

### A.  Standard of Review

" ' "Appellate review of a ruling on a summary judgment or summary adjudication motion is de novo." ' " (*Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 993.)  In performing our independent review, we apply the same three-step process as the trial court.  "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.)  When the defendant moves for summary judgment, the defendant bears both the initial burden of production and the burden of persuasion.  The "initial burden of production [requires the defendant] to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then

8

subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) The burden of persuasion requires the defendant to show that there are no triable issues of material fact and that the defendant is entitled to judgment as a matter of law. (*Id.* at p. 850.)

In determining whether the parties have met their respective burdens, the court must "'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

## B. Negligence

"'Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury.' [Citation.]" (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573.) The first element, duty, "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 985.) Everyone has a duty to use ordinary care to avoid injuring another. (Civ. Code, § 1714, subd. (a).) Whether a duty exists is a question of law. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57-58.)

Hanna contends that Tamura owed a duty of care to him and other workers on the construction site "to provide an effective temporary cover for the light well" and "to inform Sierra that the weathered plywood boards lying in the side yard actually covered a

9

13-foot concrete shaft."[5]  (Italics omitted.)  Hanna contends that Sierra owed a duty of care to him and other workers on the construction site "to ma[k]e certain that fall protection surrounding the light well was in place" and to "take measures to mitigate the risk of injury from falls that could occur as the result of their work."  Thus, Hanna contends that both Tamura and Sierra owed him a duty to take affirmative steps to prevent his injury.

The case of *Suarez v. Pacific Northstar Mechanical, Inc.* (2009) 180 Cal.App.4th 430 (*Suarez*) is instructive.  In *Suarez*, while working at a multiemployer construction site, a subcontractor's employee told his foreman that he had been injured by a nonobvious hazard which had not been created in the course of his work.  (*Id.* at pp. 433-434.)  Though the employee told his foreman about the hazard, the foreman did not report it to the general contractor and two of the general contractors were later severely injured by the same hazard.  (*Id.* at p. 434.)  *Suarez* held that the common law did not impose a duty on the subcontractor to protect the general contractor's employees from hazards that it did not create.  (*Ibid.*)  *Suarez* reasoned:  "[u]nder standard common law tort principles, '[a] person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act.  [Citations.]'  (*Williams v. State of California* (1983) 34 Cal.3d 18, 23.)  'Liability for nonfeasance is limited to situations in which there is a special relationship that creates a duty to act.  [Citations.]  "The basic idea is often referred to as the 'no duty to aid rule,' which remains a fundamental and long-standing rule of tort law. . . .  'As a rule, one has no duty to come to the aid of another.  A

_____

[5]  Hanna also claims that Tamura breached its duty to him when it "allowed . . . Sierra to send workers to the job site unsupervised on a weekend, despite . . . Lehan's instruction not to."  However, there was no evidence that Tamura knew that Sierra had sent workers to the job site on the day of the accident.  Instead, Hanna refers to Lehan's testimony that Tamura and Sierra were informed that their employees were not allowed to work unless Lehan was present.

person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act.'"" [Citation.]' (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1202-1203.)" (*Suarez*, *supra*, 180 Cal.App.4th at pp. 437-438.) "The common law did not, however, recognize such a special relationship between an employer [on a multiemployer construction site] and the employees of another employer who are present at the same worksite." (*Suarez*, at p. 438.)

Here, it is undisputed that Adorno created the light well and Harwood assumed responsibility for covering it prior to the accident. Neither Tamura nor Sierra played any role in the design, construction, or covering of the light well. Thus, since Tamura and Sierra did not create the peril that caused Hanna's injuries and there was no special relationship between Tamura and Hanna or Sierra and Hanna, neither defendant had any duty to take affirmative steps to protect Hanna from the inadequately covered light well.

Relying on *Perry v. D.J. & T. Sullivan, Inc.* (1933) 219 Cal. 384, 389 (*Perry*), Hanna contends that Tamura owed him "the duty imposed on contractors by common law to exercise ordinary care to prevent injuries to the employees of other contractors." However, *Perry* is factually distinguishable from the present case. In *Perry*, the plaintiff, who was an employee of the general contractor, was injured while using a ladder and brought an action for negligence against a subcontractor. (*Id.* at pp. 386, 388, 389.) Prior to the accident, the subcontractor's employees loosened the base of the ladder and assured the plaintiff that it had been refastened. (*Id.* at pp. 387-388.) The California Supreme Court stated that the contractors "owed to the employees of each other the same duty of exercising ordinary care for their safety during the progress of the work as they owed to the public generally. [Citations.]" (*Id.* at p. 389.) Based on evidence that the subcontractor "did interfere with the ladder and voluntarily assumed control of it, and having done so, he thereby undertook the duty of using ordinary care to see that it continued to be safe for the use of others engaged in work on the building whose duties

11

required them to make use of the ladder." (*Id.* at pp. 389-390.)  Here, in contrast to *Perry*, Tamura's employees were not working at the construction site when the accident occurred and had no role in the creation of the hazardous condition.

However, Tamura and Sierra owed a duty to use ordinary care for the safety of others while performing its work on the construction site.  (*Johnson v. Nicholson* (1958) 159 Cal.App.2d 395, 407-408.)  This duty "includes reasonable foresight as to harmful consequences of his acts and omissions.  [Citation.]" (*Id.* at p. 408.)

Tamura used ordinary care by informing two employees of Harwood, the general contractor which had assumed responsibility for covering the light well, that the plywood cover appeared inadequate.  Thus, Tamura is not liable to Hanna under the theory that Tamura breached its duty of ordinary care.

Hanna contends that there is a triable issue of material fact as to whether Sierra breached its duty of ordinary care by moving the plywood cover.  He relies on the following facts.  Lehan, who weighed more than Rodriguez or Hanna, placed the two pieces of plywood over the light well on the evening before the accident and tested its strength by standing on it.  Sierra sent its employees to the job site on a weekend, which was contrary to Lehan's orders, to install a gate very near the light well.  Prior to the accident, Rodriguez stood on the plywood for approximately 40 seconds.  Since Sierra had not informed Rodriguez of the hazard posed by the inadequate cover, he had no reason to be careful and ensure that he did not move the plywood.  Thus, Rodriguez moved the plywood without realizing that he had done so and breached his duty to use due care.

Drawing all inferences from the evidence in the light most favorable to Hanna, we conclude that he has failed to carry his burden to establish a prima facie showing of the existence of a triable issue of material fact.  (*Aguilar*, *supra*, 25 Cal.4th at p. 843, 849.)  "[A]n inference ' "" 'cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork.' "" ' [Citation.]" (*Cole v. Patricia A. Meyer & Associates, APR*

12

(2012) 206 Cal.App.4th 1095. 1113.) Here, though Lehan testified that he tested the strength of the cover "the week of January 25," there is no evidence that he tested its strength on the evening before the accident.[6] Thus, we can only speculate that Lehan placed the plywood pieces in the same position as he had done when he had previously tested the strength of the cover. Other subcontractors also had access to the construction site after Lehan placed the cover over the light well and before the accident occurred. Moreover, both Rodriguez and Puente testified that they did not move the plywood covering the light well on the day of the accident. Thus, we reject Hanna's contention that he established a triable issue of material fact that Sierra breached its duty of care by moving the plywood cover before the accident.

Relying on the contract between Harwood and Tamura, Hanna next argues in three sentences in his opening brief: Tamura assumed an express contractual duty to perform its duties for the safety of others and to comply with "all requirements of [OSHA] and California Division of Safety requirements;" and Tamura assumed these duties on behalf of its agents, including Sierra. Tamura contends that these arguments have been forfeited. We agree.

Hanna has failed to cite any authority in his opening brief to support his arguments that Tamura had either a contractual or statutory duty. (Cal. Rules of Court, rule 8.204(a)(1)(B).) He has also failed to cite any authority to support his argument that Sierra was its agent. (*Ibid.*) When an appellant raises an issue but "fails to support it with reasoned argument and citations to authority," the issue is forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

---

[6]     Cheng's opinion that the cover had been moved on the morning of the accident was also based on his assumption that Lehan tested its strength the evening before the accident.

Even assuming that these issues have not been forfeited as to Tamura, they have no merit. In its contract with Harwood, Tamura agreed to "to perform the work under this contract in a safe manner with high regard for the safety of his employees and others." However, Tamura contracted with Harwood to install landscaping. Tamura's "work under this contract" did not include the construction of either the light well or its covering. We discuss any duty by Tamura to comply with Cal-OSHA requirements in connection with Hanna's arguments regarding Sierra.

Hanna contends that Cal-OSHA provisions establish the existence of a legal duty on the part of Sierra.

"Statutes may be borrowed in the negligence context . . . to establish a duty of care . . . ." (*Eisner* v. *Uveges* (2004) 34 Cal.4th 915, 927, fn. 8.) A plaintiff may use Cal-OSHA provisions to establish the existence of a duty by a defendant who is either an employer or a third party. (*Id.* at pp. 935-936.) Labor Code section 6400, subdivision (b) sets forth which employers may be held liable for the violation of a Cal-OSHA regulation on a multiemployer worksite. It provides: "On multiemployer worksites, both construction and nonconstruction, citations may be issued only to the following categories of employers when the division has evidence that an employee was exposed to a hazard in violation of any requirement enforceable by the division: [¶] (1) The employer whose employees were exposed to the hazard (the exposing employer). [¶] (2) The employer who actually created the hazard (the creating employer). [¶] (3) The employer who was responsible, by contract or through actual practice, for safety and health conditions on the worksite, which is the employer who had the authority for ensuring that the hazardous condition is corrected (the controlling employer). [¶] (4) The employer who had the responsibility for actually correcting the hazard (the correcting employer). [¶] The employers listed in paragraphs (2) to (4), inclusive, of this subdivision may be cited regardless of whether their own employees were exposed to the hazard." (Lab. Code, § 6400, subd. (b).)

14

Here, neither Tamura nor Sierra was an "employer" as defined in Labor Code section 6400. First, Hanna, who was exposed to the hazard, was not employed by either Tamura or Sierra. Though Rodriguez testified that he stood momentarily on part of the plywood cover prior to the accident, he was not exposed to the danger created by the inadequate plywood cover. Thus, neither defendant was an "exposing employer." (Lab. Code, § 6400, subd. (b)(1).) Second, neither Tamura nor Sierra created the hazard. Adorno constructed the light well and Harwood improperly covered it with pieces of plywood. Thus, neither Tamura nor Sierra was a "creating employer." (Lab. Code, § 6400, subd. (b)(2).) Third, neither Tamura nor Sierra was "the employer who had the authority for ensuring that the hazardous condition [was] corrected . . . ." Harwood had this responsibility, and thus neither Tamura nor Sierra was the "controlling employer." (Lab. Code, § 6400, subd. (b)(3).) Fourth, since Harwood was responsible for all aspects of project management, construction, and safety, neither Tamura nor Sierra had any responsibility for correcting the hazard and thus was not a "correcting employer." (Lab. Code, § 6400, subd. (b)(4).)

Hanna argues, however, that Sierra was a "creating employer" because Sierra exacerbated the danger of a preexisting hazard. As previously discussed, Hanna failed to raise a triable issue of fact on this issue. Hanna also contends that Sierra was a "controlling employer," because Tamura had assumed contractual duties on behalf of Sierra to perform the work in a safe manner and to comply with all Cal-OSHA requirements. As previously discussed, the issues of Tamura's contractual and statutory duties and whether Sierra was an agent of Tamura were forfeited.

In sum, we conclude that the trial court properly granted the motion for summary judgment brought by Tamura and Sierra.[7]

---

[7] Hanna concedes that Harwood's and Adorno's cross-claims against Sierra for equitable indemnity cannot be sustained absent liability by Sierra for negligence.

15

### III. Disposition

The judgment is affirmed. Costs on appeal are awarded to Tamura and Sierra.

_____

Mihara, J.

WE CONCUR:

_____

Premo, Acting P. J.

_____

Elia, J.

17